## BAKE v INDUSTRIAL COMMISSION

Ohio Appeals, 1st Dist, Butler Co

No 753.   Decided June 17, 1938

S. S. Stewart, Walter S. Harlan, Hamilton, for appellee.

Herbert S. Duffy, Columbus; C. L. Hawthorne, and Paul A. Baden, Hamilton, for appellant.

### OPINION

By ROSS, PJ.

The decedent of plaintiff was employed by Miami University working in the kitchen at Oxford College. He was over 63 years of age, of slight figure and was in poor health, suffering with heart trouble and chronic nephritis, accompanied by hardening of the arteries. On Sunday, December 12, 1932, he was taken to his place of employment in an automobile by his son. The decedent at that time was in his usual state of health and seemed cheerful. Pursuant to a request communicated to his son, who was unemployed, he was called for the same day at 4:00 P. M.

The son was permitted to testify, over the objection of the defendant, that his father was in "deep agony" and that his father told him he had hurt his side while lifting a crate of head lettuce in the kitchen of the college.

The son further stated that when he first saw his father, on his return for him, that he was holding his side and that during the drive of two miles to his home he suffered greatly, that on arriving at home he sat down upon a chair, and decedent's wife applied hot cloths to his side, that he was confined to his bed for a period of ten days— and still suffered greatly during that period. The son was again permitted to testify, over the objection of the defendant, as to conversations with his father while riding in the son's automobile, on the way to his home, and in which the father stated that "in lifting the head lettuce something gave way— seemed to be a sort of a snap." The son further stated his father was "at the point of death" for several days.

The decedent's wife testified that the decedent "wasn't a robust man—he was rather puny in health" and that on the day of the injury "his health was so that he was able to work"; that when she next saw him after her son had brought him home in the afternoon "he came in walking as though he could hardly get to the chair across the room, and he sat down and called for me to bring hot applications"; that he was suffering great pain, and that she saw a protrusion on his side, which had not been there previously, that he vomited continuously, that a Dr. Smith was called and waited upon him for a number of days, that he went back to work on the first of March, and worked until the 29th of March, when he came home, took to his bed and died the 18th of April, that during this period when he was attempting to work he was brought

home ill three times. The wife of decedent was not permitted to testify to what her husband said as to his condition and the cause thereof when she first saw him on the afternoon of December 12th.

Dr. Smith testified he was the family physician of the decedent, that the deceased had suffered from Brights disease and hardening of the arteries for a number of years, that on the 13th of December he was called to wait upon the decedent and found him suffering from a "strangulated inguinal hernia on the right side", that he treated him for a number of days and gave him a truss to wear, that he was again called on the 15th of April, and that plaintiff's decedent died on the 18th of April, and that the hernia hastened his death.

A Dr. Smedley testified the strangulation incident to the hernia of decedent produced a shock to his system from which he never recovered.

The defendant introduced in evidence the physician's certificate filed with the Industrial Commission, in which the immediate cause of death was asserted to be "Acute dilation of the Heart" and the remote cause of death "Chronic Nephritis", the same statement being made in the same physician's certificate of death filed with the state department of vital statistics. In the latter certificate, the physician certified in answer to the question: "Was disease or injury in any way related to occupation of deceased? No."

The jury returned its verdict permitting participation in he fund.

It is asserted by the defendant that there was no competent evidence that the hernia suffered by the decedent was received during the course of the employment of the decedent and arose out of and by reason of such employment, or that such hernia was the result of an accidental injury.

Counsel for plaintiff claims that that element of her case was proved by the testimony of the son and wife. If, however, the testimony of the son as to statements of the father was incompetent, then there is no evidence to sustain this necessary feature of the case of plaintiff. It is asserted in her behalf that such evidence was competent under the rule of res gestae, an exception to the rule against hearsay evidence.

Were the statements of the decedent to his son as to cause and character of his injury competent?

The importance of such evidence to the plaintiff is manifest. If its introduction can be legally sustained, justice impels a court in favor of the introduction of the evidence. Properly or improperly, justly or unjustly, wisely or unwisely, as at present administered trials of appeals from decisions of the Industrial Commission upon rehearing are governed by law requiring the application of the usual rules of evidence to such proceedings. To hold otherwise, would be a definite invasion of the field allotted to the legislative branch of the government. **Weaver v Industrial Commission of Ohio, 125 Oh St 465, 466.**

This court is, therefore, directly bound by the pronouncements of the Supreme Court and must consider at least with respect the decisions of other courts upon what does and what does not constitute res gestae.

In **New York, Chicago & St. Louis Rd. Co. v Kovatch, Admr., 120 Oh St 532,** the Supreme Court adopts the formula of Prof. Wigmore:

"'(a) Nature of the occasion. There must be some shock, startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting. * * *

'(b) Time of the utterance. The utterance must have been before there has been time to contrive and misrepresent, i. e. while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance. This limitation is in practice the subject of most of the rulings. * * *

'(c) Subject of the utterance. The utterance must relate to the circumstances of the occurrence preceding it.'"

Again, on page 537 of this opinion the court say, quoting from **State v Lasecki, 90 Oh St 10:**

" 'The doctrine of res gestae, as applied to exclamations, should have its limits determined, not by the strict meaning of the word 'contemporaneous,' but rather by the causal, logical or psychological relation of such exclamations with the primary facts in controversy.' "

In State v Lasecki, supra, at page 13, the court say:

"Wharton's definition of res gestae is as follows:

'Those circumstances which are the undesigned incidents of particular litigated acts, and are admissible where illustrative of such acts. These incidents may be separated from the act by lapse of time more or less appreciable. Their sole distinguishing feature is that they should be necessary incidents of the litigated act— necessary in this sense: that they are part of the immediate preparations for, or emanations from, such acts, and are not produced by the calculated policy of the actors. In other words, they must stand in immediate causal relation to the act—a relation not broken by individual wariness seeking to manufacture evidence for itself. Therefore declarations which are the immediate accompaniments of an act are admissible as part of the res gestae; remembering that immediateness is tested by closeness, not of time but by causal relation, as just explained.' 7 Words and Phrases Judicially Defined, 6130."

Again, Wharton says res gestae are the facts which form the environment of a litigated issue.

Bishop, in his New Criminal Procedure (2 ed.) Sec. 1085, uses the following: 'But it is difficult, perhaps impossible, to formulate an available rule as to what shall be deemed of the transaction, and what shall not. It appears safe to say that the subsidiary act need not transpire at the same instant with the main one, or always even on the same day; and, in reason, as well as in accordance with the current of the authorities, the time which divides the two is not the controlling consideration, though it may be taken into the account. It is presumable that, distinctly and palpably, it influenced or was influenced by the main act, or proceeded from the same motive? If so, it is admissible, otherwise not.'

Again, the same author, in Sec. 1086, uses this language: 'The admissibility of particular acts being conceded, whatever of a nature explanatory thereof was during their performances said, whether by the doers or by the lookers-on, by the parties to the litigation, or by third persons, may, subject to some apparent or real qualifications, be given in evidence whenever the acts are. * * * In a general sense, the declarations from whatever source must, to be thus admissible, be contemporaneous with the act they would illustrate. We may have cases apparently requiring them to be strictly so. But it is, at least, the better doctrine that they are competent whenever near enough to the act either before or after it, to be probably prompted by the same motive, not an afterthought, and apparently to constitute of it a part; otherwise they are not competent.'

Professor Wigmore, in his excellent work on Evidence, Vol. 3, Sections 1745 to 1747, discusses this same question with large ability and logical analysis, showing the foundation of the principle in the doctrine of res gestae as applicable to exclamations and as constituting a striking exception to the hearsay rule.

In Sec. 1747 the author uses this language:

'This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-in-

terest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts. The ordinary situation presenting these conditions is an affray or a railroad accident. But the principle itself is a broad one. Its phrasings differ widely in different courts; but there is in the judicial opinion of today something of an approach to uniformity.' "

In 17 O. Jur., p. 353, §284, it is stated:

"Though as stated in the preceding sections, declarations or exclamations, to be admissible as a part of the res gestae, need not always be 'contemporaneous,' in the strict sense of that word, with the transaction in controversy, if there is some causal, logical, or phychological relation between the exclamation and the primary facts in controversy, it is clear that declarations amounting merely to a narration of past events are not admissible, even though they may have been made immediately after the transaction. Thus, in an action for injuries sustained by falling or by being precipitated into a ditch, it is not competent for the husband of the party injured to prove what his wife said immediately afterward, while being helped out of the ditch, as to the cause of the accident, it being a mere account of a past transaction. The utterance must be a spontaneous exclamation, uttered while nervous excitement still dominates, and relating to the circumstances of the accident rather than a narrative statement; otherwise it must be excluded by reason of the rules prohibiting hearsay evidence. Statements to a physician concerning the cause of the injury, made eight months after the accident happened, are a mere narration of past events, and not a part of the res gestae."

In support of the text the editors cite: **Stetson v Bank of New Orleans, 2 Oh St 167; Forrest v State, 21 Oh St 641; Cleveland, Columbus & Cincinnati Rd. Co. v Mara, 26 Oh St 185; Life Ins. Co. v Cheever, 36 Oh St 201; Dilcher v State, 42 Oh St 173.**

This Court has also expressed itself upon this matter in **Schomer v State, ex Bettman, 47 Oh Ap 84.** At page 86 of the opinion, the Court say:

"An examination of the record discloses that the trial court was unduly strict in limiting the examination of the widow as to statements of the deceased constituting res gestae. Any relevant statement made by the deceased immediately after the injury, bearing a character of spontaneity, would be competent. Such statements were excluded, and wrongfully so. They would have complied with the requirements indicated as necessary in **Weaver v Industrial Commission, 125 Oh St 465, 181 N. E. 894,** and **Coutellier v Industrial Commission, 126 Oh St 546, 186 N. E. 400.**"

From the authorities noted and many others, too numerous to be commented upon, it is apparent that the test of admissibility is the spontaneous character of the statements prompted by a nervous excitement preventing calculation of the effect of the statement. Regardless of the hardship involved, it is obvious that the statements here in question lack the essential requirements of the formula.

It is not apparent from the record when the injury to decedent was received. It might have been any time from 8:00 A. M., until shortly before 4:00 P. M. We may infer that it must have been some little time before the son called at four o'clock, for it is in evidence that he came in response to a call received by him. Where he was or how far or how long it took him to come is not disclosed by the record. Certainly, the statements made on the way home can not be considered competent under the rule, and in-

competent testimony loses nothing of its prejudicial nature by being merely cumulative. **N. Y. Central Rd. Co. v Stevens, Admr., 126 Oh St 395.**

The only suggestion of a spontaneous character of the statements is to be found in the fact that some of the statements of decedent were made immediately upon the arrival of the son.

We do not know whether the decedent had any co-workers, or that there was any one else to whom he could have promptly spoken, except, again, that some one knew of his situation and called his son.

There are many cases where the prompt statement of an injured employee to those who soon after an injury discover the plight of the employe, is competent. Consideration of the present limitations of the rule, in the absence of action by the legislature, require the exclusion of the statements in question. The admission of same constituted prejudicial error.

The defendant complains because the following special charge was refused:

"I charge you as matter of law that unless you find by a preponderance of the evidence that Marion Bake, deceased husband of the plaintiff herein, died as a result of an injury sustained on the 12th day of December, 1932, while in the course of his employment with the Miami University of Oxford, Ohio, and from a cause arising out of the employment, and that such cause arose in such manner as not to be in the usual events of his employment, then your verdict should be for the defendant."

The giving of this charge would not be justified by the conclusions of this court in **Street Ry. Co. v Clock, 50 Oh Ap 139.**

It is suggestive, at least, of a more limited rule than that specified in **Industrial Commission v Franken, 126 Oh St 299.**

The Court committed no error in refusing it. Its concluding language is far from definite and certain of meaning. Construing its possible interpretation by a jury, it is in any event misleading. A jury might well consider from the language used that in order to permit participation in the fund they must find that the cause of the injury was wholly unconnected with the employment, when the law and the very charge definitely provide the contrary.

In view of the fact that the only evidence which can be received upon an Industrial Commission appeal is that presented at the rehearing and that a re-trial of the case would not enable the trial court to hear additional and different evidence, and that the statements of the decedent to his son, both at the time of the arrival of the son and later on the way home were incompetent, and should have been excluded, we are required by such circumstances to render the judgment the trial court should have rendered upon the request of the defendant for an instructed verdict in its favor.

An entry so providing may be presented.

MATTHEWS, J, concurs.

HAMILTON, J, dissents.

HAMILTON, J. (Dissenting)

I cannot concur in the majority opinion in this case.

The decision is grounded upon the question of the admissibility of the testimony of the son of the deceased workman, regarding the statements of the deceased as to how the accident happened.

The evidence as given by the son is stated in the opinion and is as follows:

"The son testified, over objection of the defendant, that his father was in "deep agony" and that his father told him he had hurt his side while lifting a crate of head lettuce in the kitchen of the college.

The son further stated that when he first saw his father, on his return for him, that he was holding his side and that during the drive of two miles to

his home he suffered greatly, that on arriving at home he sat down upon a chair, and that the decedent's wife applied hot cloths to his side, that he was confined to his bed for a period of ten days—and still suffered greatly during that period. The son was again permitted to testify, over the objection of the defendant, as to conversations with his father while riding in the son's automobile, on the way to his home, and in which the father stated that "in lifting the head lettuce something gave way—seemed to be a sort of a snap." The son further stated that his father was "at the point of death" for several days.

The decedent's wife testified that the decedent "wasn't a robust man—he was rather puny in health" and that on the day of his injury "his health was so that he was able to work"; that when she next saw him after her son had brought him home in the afternoon "he came in walking as though he could hardly get to the chair across the room, and he sat down and called for me to bring hot applications"; that he was suffering great pain. and that she saw a protrusion on his side, which had not been there previously, that he vomited continuously, that a Dr. Smith was called and waited upon him for a number of days, that he went back to work on the first of March, and worked until the 29th of March. when he came home, took to his bed and died the 18th of April, that during this period he was attempting to work he was brought home ill three times. The wife of decedent was not permitted to testify to what her husband said as to his condition and the cause thereof when she first saw him on the afternoon of December 12th."

The trial court admitted this evidence which established the causal connection between the injury and the death of the employee.

The majority opinion now holds that the admission of the evidence was error, as not being within the exception to the hearsay rule, and, since there was no other proof of how the injury happened, the judgment should be reversed and final judgment for the Industrial Commission should be entered here.

Under the evidence as above quoted it is difficult to understand the conclusion reached by the majority of the court. The facts stated in the opinion stamp the evidence as admissible under the exception to the hearsay rule.

Generally stated, the rule is that where statements are made concerning occurrences and facts, and such statements are made under such circumstances as to repel any suspicion of an ulterior motive, and under such circumstances as to stamp the statements as true rather than otherwise, the party to whom the statements were made, or who heard the statements, may testify thereto, and the same is admissible under the exception to the hearsay rule. 3 Wigmore on Evidence, 2nd Ed. Secs. 1746-1747, et seq. Jones on Evidence, 2nd Ed., Vol. 3, sec. 1217, et seq., and cases cited in the notes. See also: O. Jur. Vol. 17, §274, et seq, where in the text and in the cases cited similar evidence and the rules applicable are discussed and the admissibility upheld.

In the case of **Taylor v Industrial Commission, 13 Oh Ap 262,** the evidence given by a fellow-workman of statements made by Taylor as to how he received an injury to his head was held admissible, and many cases bearing on the question are cited. In the Taylor case, the Court quotes from Wigmore on Evidence, section 1747. wherein the author says:

"This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest

could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts."

One of the reasons for admitting such evidence is the necessity of the case. Such necessity is clearly shown in this case. The majority opinion finds that without this evidence there is none on the point. By this holding we see justice defeated, and the widow deprived of support under a law provided for dependent widows and children, all because the majority of this court holds the statements of her injured husband, found in agony by his son. as to how he hurt himself, spontaneously uttered, and made at his place of employment, could not be testified to by the son and should be excluded as hearsay.

If this is correct, every employee working alone would be put to the necessity of hiring or providing someone competent to testify in case he was injured and death resulted, in order to enable his dependents to receive the benefits of sharing in the state insurance fund, which law the Supreme Court has held should be liberally construed in order to bestow the beneficent effect of that law.

I find no supporting authority for the majority opinion, and ample authority requiring a contrary conclusion.

Moreover, §1465-91, GC, provides:

"Such commission shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rule of procedure." etc., and this provision was held to be binding upon the Courts in the case of **Roma v Industrial Commission, 97 Oh St 247.** See also: **Humphries v Wheeling Steel Corp., 132 Oh St 263.**

The case of **Baker v Industrial Commission,** reported in **44 Oh Ap 530,** involved the same question as presented in the instant case. The Court in that case held that the statements of the decedent to his physician as to how the injury occurred was held admissible, and further held that the circumstances under which the decedent was found at his place of work, sick and suffering, were sufficient to take the case to the jury.

In the case under consideration, the decedent was found at his place of work suffering great pain, bent over, and appeared to be in great agony. As the Court stated in the Baker case, supra, "where else in the realm of probabilities, did Hastings sustain a strain that caused hernia, if not in the course of his employment?" The instant case should have gone to the jury under the circumstances to draw the inference as to whether the deceased was injured in the course of his employment. "Where else in the realm of probabilities did Bake sustain the injury?"

The majority opinion is in direct conflict with the Baker case, and, in my opinion, considering the unsupported character of the decision on the evitiary question, the case should be certified to the Supreme Court for its consideration.